# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| ELIZABETH CHRISTINE BRIGGS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
| v. | ) | 1:18CV217 |
|  | ) |  |
| NANCY A. BERRYHILL, | ) |  |
| Acting Commissioner of Social | ) |  |
| Security, | ) |  |
|  | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND ORDER OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Elizabeth Christine Briggs brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment.[1]

## I. PROCEDURAL HISTORY

Plaintiff filed applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") alleging disability beginning October 25, 2009. (Tr. at 66, 79, 94, 109.) For the purposes of DIB, Plaintiff's date last insured is December 31, 2014. The applications were denied initially and upon reconsideration. (*Id.* at 92-93, 124-25.) After a hearing, the Administrative Law Judge ("ALJ") determined on August 21, 2017 that

---

[1] By Order of Reference, this matter was referred to the Undersigned to conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c). (Docket Entry 15.)

Plaintiff was not disabled under the Act. (*Id.* at 10-22, 36-65.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for purposes of review. (*Id.* at 1-6.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 23, 2014.[2] (Tr. 23.) The ALJ next found the following severe impairments at step two: obesity, chronic obstructive pulmonary disease (COPD), diabetes mellitus type 2 with neuropathy, right knee osteoarthritis, major depressive

---

[2] Plaintiff initially alleged disability beginning October 25, 2009, but at the hearing, amended her onset date to May 23, 2014. (Tr. 45.)

2

disorder and borderline personality disorder. (*Id.* at 13.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (Tr. 24.)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that she could perform the following:

> Sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) with no requirement to climb ladders, ropes, and scaffolds. All other postural are occasional. No push or pull with her lower extremities. No concentrated exposure to extreme temperatures. No requirement to work among crowds of the general public. No complex tasks. Simple, routine, repetitive tasks with occasional decision-making and occasional changes to the work duties. No tandem work and only casual, non-intense contact with others necessary to perform the work duties.

(*Id.* at 16.)

At the fourth step, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 21.) Last, at step five, the ALJ concluded that there were jobs in the national economy that Plaintiff could perform. (*Id.* at 22.)

### IV. ISSUES AND ANALYSIS

Plaintiff contends that the ALJ's mental RFC determination is unsupported by substantial evidence because the ALJ "failed to follow treating physician rule." (Docket Entry 12 at 2.) Plaintiff also contends that "the ALJ failed to properly develop the record regarding Plaintiff's physical impairments . . . ." (*Id.*) For the following reasons, Plaintiff has failed to identify any material error.

3

## A. The ALJ Did Not Fail to Follow the Treating Physician Rule.

The treating source rule requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). A treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *See* 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4); SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

Plaintiff now contends the ALJ committed reversible error by failing to analyze the opinions of her treating physician, Dr. Froelich, as well as according little weight to the opinions of the state agency psychologists. Dr. Froelich completed a mental capacity assessment (via check-box form), in which she diagnosed Plaintiff with major depressive disorder, severe, without psychosis, (Tr. 480-83), and further stated that Plaintiff is suffering from sleep apnea, obesity, and type II diabetes. (*Id.*) The ALJ properly accorded this opinion little weight.

In her opinion, the ALJ highlighted that Dr. Froelich found that Plaintiff had marked limitations in carrying our very short and simple instructions, but only moderate limitations in carrying out detailed instructions—a clear contradiction. (Tr. 19 referencing 480.) Plaintiff

4

asserts that this one single inconsistency did not give the ALJ a reason to reject the entire opinion. (Document Entry 12 at 9.)

Plaintiff's argument is without merit for several reasons. The ALJ's opinion states in relevant part:

> [T]he mental capacity assessment completed by Mary Froelich, M.D. in March 2015 is given little weight [Tr. 480]. The opinion is internally inconsistent, rating the claimant's ability to carry out very short and simple instructions to be markedly limited and her ability to carry out detailed instructions as only moderately limited. In addition, the opinion is speculative regarding the start date of the claimant's mental limitations. Although Dr. Froelich has only been treating the claimant since June 2014, she opined that the limitations outlined in the mental capacity assessment have existed since 2007. Dr. Froelich' s opinion is also not consistent with the level of functioning indicated in the medical evidence of record. Dr. Froelich's clinical notes in July 2015 indicate that the claimant was somewhat less depressed, did not show any delusions or psychosis, auditory or visual hallucinations, and her insight and judgment are good [Tr. 646]. The claimant's affect was stable with occasional tearfulness, but no active sobbing and mostly neutral or somewhat sad [Tr. 646]. [Tr. 646]. In April 2016, her mood was described as anxious and somewhat depressed, with attention, concentration, judgment, and insight all listed as good and cognition and memory as grossly intact [Tr. 636].

(Tr. 19.) Not only is Dr. Froelich's opinion internally inconsistent, it is not supported by the objective medical evidence, as further stated below. Secondly, Dr. Froelich stated it was her "opinion" that Plaintiff had the limitations outlined in the mental capacity assessment since 2007, seven years before the onset of disability and when Dr. Froelich began treating Plaintiff. In her brief, Plaintiff points to the following to support her argument: treatment notes that dates to 2008 which included CT scans, medication discharge notes, and lab workups (Docket Entry 12 at 10, referencing Tr. 615); the ALJ's mention of Plaintiff's sleep apnea diagnosis

5

which began either in 2009 or 2010 (Docket Entry 12 at 10, referencing Tr. 13); records of Plaintiff's COPD diagnosis (Tr. 570, 576); Plaintiff's testing for communicable diseases in 2010 (Tr. 396); and a "clinical update" from Daymark Recovery services that indicated Plaintiff's last use of Cymbalta was in 2010. (Tr. 397.)

The ALJ correctly pointed out that this observation is speculative. As Defendant correctly asserts, it is unclear how the references to treatment for Plaintiff's physical impairments show that her mental impairments began as early as 2007, especially if the record shows that Plaintiff was still working from 2007-2009.

Next, and most importantly, the ALJ correctly asserted that Dr. Froelich's mental capacity assessment is inconsistent with the objective medical evidence. In her opinion, the ALJ cited to the following: a July 2015 clinical note stating that Plaintiff was "somewhat depressed," did not show any signs of delusions or psychosis, auditory or visual hallucinations, and her insight and judgment are good, with a stable affect and occasional tearfulness, but no active sobbing and mostly neutral or somewhat sad (Tr. 646), and a April 2016 clinical note that described Plaintiff's mood as anxious and somewhat depressed with attention concentration, judgment and insight all listed as good and cognition and memory as grossly intact. (*Id.* at 636.) Although Plaintiff sought treatment for depression, treatment notes also chronicled Plaintiff's positive responses to Pristiq and Brintellix, (*See* Tr. 470, 636, (Pristiq); 632, 644 (both medications)), as well as Plaintiff's cooperation and participation in group activity sessions. (*See* Tr. 461, 472, 732, 734, 736.)

This Court recognizes that the record is not entirely devoid of episodes of decomposition—in December 2014, for example, Plaintiff presented with tearfulness and

6

depression due to her father suffering a heart attack on Christmas day (Tr. 449); then again when her father turned gravely ill and subsequently passing away (Tr. 634, 636); Plaintiff reported stress, appeared to be tearful, and expressed an urge to use drugs and alcohol when her aunt passed away (Tr. 740); reported feeling depressed—amongst other emotions—amid ongoing issues with her boyfriend (Tr. 382, 449, 452, 471); and presented with tearfulness and stress after being diagnosed with an abdominal hernia, which required surgery. (Tr. 740, 757.) However, each of these episodes is attributable to a significant life event. Otherwise, the record from the relevant time period demonstrates that Plaintiff was mentally functional, sociable, and able to perform a wide range of activities. *See e.g., Kleboe v. Colvin*, No. 1:14CV914, 2016 WL 901291, at *5 (M.D.N.C. Mar. 3, 2016).

Lastly, as Defendant correctly points out, Plaintiff's major depressive disorder was characterized on several occasions as "moderate," both before and after Dr. Froelich's assessment that indicated Plaintiff suffered from a more severe case. (*See* Tr. 648 (March 25, 2015 treatment note recording diagnosis of "Major depressive disorder, recurrent, severe")), *compare* Tr. 400 (March 17, 2014 treatment note recording diagnosis of "Major Depressive Disorder, Recurrent, Moderate"); Tr. 392 (May 7, 2014 treatment note recording same); Tr. 470 (June 23, 2014 treatment note recording same); Tr. 646 (June 15, 2015 treatment note recording same); Tr. 638 (March 14, 2016 treatment note recording same); Tr. 498 (March 10, 2017 treatment note recording same.)) Thus, the ALJ properly accorded Dr. Froelich's mental capacity statement little weight.

As it relates to another treatment opinion provided by Dr. Froelich, Plaintiff asserts that the ALJ committed reversible error by failing to weigh the opinion in its entirety. (Docket

7

Entry 12 at 5.) In an evaluation dated September 24, 2014, Dr. Froelich opined that

> At this time the client is considered unable to work due to her obesity and depression., while her mood has stabilized, it is still fragile and she us easily agitated or stressed, with worsened ability to concentrate, remain in control and be able to complete tasks of her usual occupation; her obesity also makes her less able to physically meet the demands of work due to fatigue and low energy.

(Tr. 457.) This argument also fails. Dr. Froelich provides little-to-no explanation of the evidence used to form her opinions and the record generally lacks objective medical evidence in support of her conclusory allegations. *See* 20 C.F.R. § 404.1527(c)(3) (stating that the better explanation a source provides for an opinion, the more weight the Commissioner gives that opinion); *see generally Foltz v. Colvin*, No. 1:14CV55, 2015 WL 339654, at *5 (M.D.N.C. Jan. 23, 2015). Dr. Froelich states in the record in a conclusory fashion that Plaintiff is "unable to work." (*See e.g.,* Tr. 457.) However, whether a claimant is disabled is an issue reserved for the Commissioner and Dr. Froelich's opinion is not entitled to any weight. *See* 20 C.F.R. § 404.1527(d)(1) ("Opinions on some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner . . . A statement by a medical source that you are 'disabled" or "unable to work' does not mean that [the Commissioner] will determine that you are disabled."); *see also Coleman v. Colvin*, No. 1:15CV751, 2016 WL 4223583, at *7 (M.D.N.C. Aug. 9, 2016), report and recommendation adopted, No. 1:15CV751, 2016 WL 5372817 (M.D.N.C. Sept. 26, 2016)

Lastly, not only is this opinion inconsistent with the evidence of record (see above), the opinion is internally inconsistent, in and of itself. Although Dr. Froelich stated that Plaintiff is "unable to work due to her depression" and "has a worsened ability to concentrate,"

8

the note also indicates that Plaintiff was "feeling fairly well without severe depression . . . [and] able to cope and function better." (Tr. 457.) In addition, the note states that Plaintiff "did not show severe depression," although she was "still stressed," with an "overall positive attitude." (*Id.*) Consequently, the Court finds the ALJ's treatment of Dr. Froelich's opinions complied with the applicable regulations and was supported by substantial evidence.

**B. The ALJ Fulfilled Her Duty to Develop the Record in This Case.**

Next, Plaintiff asserts that the ALJ failed to "properly develop the record regarding Plaintiff's physical impairments, rendering her RFC determination unsupported by substantial evidence." For the following reasons, Plaintiff has failed to identify any material error.

The ALJ has a duty to help develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). In *Cook*, the Fourth Circuit stated that "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record and cannot rely only on evidence submitted by the claimant when that evidence is inadequate." *Cook*, 783 F.2d at 1173. The regulations require only that the medical evidence be "complete" enough to make a determination regarding the nature and severity of the claimed disability, the duration of the disability and the claimant's residual functional capacity. *See Kersey v. Astrue*, 614 F. Supp. 2d 679, 693–94 (W.D. Va. 2009) (citing 20 C.F.R. §§ 404.1513(e), 416.913(e) (2008)).

Plaintiff argues that the ALJ "dismissed every medical opinion in the record", and "formulated an RFC regarding Plaintiff's functional impairments that is based on her own lay interpretation of the medical evidence." (Docket Entry 12 at 15.) Plaintiff compares this matter to *Farrar v. Astrue*, where the court held the ALJ erred when she rejected four different

9

medical opinions and instead formulated an RFC based on the raw medical evidence. No. 3:11cv457, 2012 WL 3113159, at *10–11 (E.D.Va. July 13, 2012) (unpublished); *see also Webster v. Colvin*, No. 1:11CV101, 2014 WL 4060570, at *4–5 (M.D.N.C. Aug. 15, 2014) (unpublished) (Peake, M.J.), *recommendation adopted, slip op.* (M.D.N.C. Sept. 17, 2014) (Osteen, Jr., C.J.) (Where the ALJ expressly interpreted the raw data from the claimant's treatment notes to discredit the opinions of the psychiatric consultants and used the raw data to formulate an RFC which was unsupported by the uncontroverted opinion evidence in this case.).

Plaintiff's arguments are unpersuasive. Here, as in *Farrar*, the ALJ was confronted with several opinions determining several different RFCs. Given the conflicting medical evidence, the ALJ was permitted to assign different levels of weight to each opinion. The *Farrar* court held the ALJ erred when he failed to give deference to four different medical experts that held the plaintiff was limited to either no work or at most, sedentary work—where the ALJ concluded the plaintiff retained the RFC to perform light work. Here, the ALJ did not reject "all" of the medical evidence—she properly assigned some weight to the opinion and little (or no) weight to others. As Defendant correctly points out, the ALJ considered the entire record, including Plaintiff's testimony and subjective complaints, medical records, opinion evidence, and a third-party function report. (Document Entry 14 at 12, referencing Tr. 17-21.) After summarizing the medical evidence relating to each of Plaintiff's physical impairments and specifically tying that evidence to her RFC findings, the ALJ turned to the medical opinions relating to Plaintiff's physical impairments, none of which concluded that Plaintiff was disabled or even that she had more significant limitations than what the ALJ ultimately found. (*Id.* at 17-20.)

As it relates to the two state agency medical consultants, Stephen Levin, M.D., and Melvin L. Clayton, M.D., the ALJ observed that they did not review the entire record and, more specifically, that they did not consider Plaintiff's peripheral neuropathy when limiting Plaintiff to a restricted range of light work. (*See* Tr. 18-19.) Therefore, the ALJ properly accorded the opinions little weight.

As it relates to the opinion of physician David N. Smith, M.D., the ALJ properly assigned it no weight. Dr. Smith declined to complete the functional limitations and indicated that he did not know if Plaintiff was physically able to perform full time work. (Tr. 19-20.) Furthermore, the ALJ assigned some weight to the report of consultative examiner Stephen Burgess, M.D., Ph.D.—noting that while he found, based on an examination, that Plaintiff had mild to moderate limitations in various postural activities, walking, carrying, pushing, pulling, hearing, and speaking, he had not expressed his opinion in vocationally relevant terms. (Tr. 20.) Nevertheless, the ALJ found that the examination and opinion were consistent with the overall treatment record. (Tr. 20.) Notably, the ALJ also assigned a number of postural limitations, restricted Plaintiff to sedentary work (i.e., limited her need to walk), and limited her to no pushing and pulling – all restrictions that align with (or even exceed) Dr. Burgess's opinion that Plaintiff had mild to moderate limitations in those functional areas. (*Id.*) The opinions referenced above actually showed that Plaintiff was *more* limited than what the state agency physicians had opined. (*Id.* at 19.) Although the ALJ found that Plaintiff had greater exertional limitations than what the state agency medical consultants found, the ALJ's restrictions to occasional postural activities with no climbing of ladders, ropes, or scaffolds are in accordance with the postural limitations the state agency consultants outlined. (*See* Tr. 16

11

referencing 88, 119-20). Therefore, the ALJ did not outright reject every medical opinion in favor of a less restrictive RFC, but instead rejected or assigned weight based on the consistency of the opinions against the objective medical evidence and accounted for additional restrictions when necessary. If the ALJ in this case mis-weighed the opinions of the state agency consultants, it is harmless error at best. *See Baker v. Colvin*, Civil No. 3:15-CV-00637, 2016 WL 3581859, at *7 (E.D. Va. June 7, 2016) (upholding ALJ's decision when he appropriately assigned little weight to two medical opinions and rejecting the plaintiff's argument that an RFC must be directly supported by a medical opinion).

Lastly, Plaintiff argues that the ALJ should have "ordered a consultative examination, recontacted a treating physician, or employed the use of a medical expert at the hearing to determine the extent of Plaintiff's limitations, rather than estimate or guess as to the most Plaintiff could do." (Docket Entry 12 at 15.) This contention is also without merit. Under the regulations, the ALJ is not required to re-contact a treating physician.[3] Even under the old regulations, courts have held that an ALJ had no obligation to recontact a physician if the evidence on record allowed the ALJ to make a determination. *See Jackson v. Barnhart*, 368 F. Supp. 2d 504, 507 (D.S.C. 2005). In addition, the ALJ was not required to employ a medical expert at the hearing, unless the ALJ outright rejected the medical opinions and formulated an RFC based on her interpretation of the raw medical data. *See Farrar*, 2012 WL 3113159, at

---

[3] Although ALJs previously had a duty to recontact physicians under certain circumstances, the language of 20 C.F.R. § 404.1512(e) was modified on February 23, 2012, and the requirement that an ALJ recontact a treating physician was removed. *See* 77 Fed. Reg. 10651 (Feb. 23, 2012). At the time of the ALJ's decision, 20 C.F.R. § 404.1512(e) did not require re-contacting the treating physician; that subsection no longer exists. *See* 20 C.F.R. § 404.1512 (Effective Mar. 17, 2017).

12

*10 (citing *Young v. Bowen*, 858 F.2d 951, 956 (4th Cir. 1988)) ("[A]bsent contrary medical evidence, the [ALJ] lack[s] any basis to reject the competent judgment of a concededly reliable expert.").[4] For all these reasons, Plaintiff has failed to demonstrate material error.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct and supported by substantial evidence. Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Judgment (Docket Entry 10) be **DENIED**, Defendant's Motion for Summary Judgment (Docket Entry 13) be **GRANTED**, and the final decision of the Commissioner be upheld.

A Judgment dismissing this action will be entered contemporaneously with this Order.

_____
Joe L. Webster
United States Magistrate Judge

February 12, 2019

---

[4] Moreover, an ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion." *Farrar*, 2012 WL 3113159, at *10 (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)). Where "no medical opinion" supports the ALJ's RFC determination, as a "lay person" he is "simply not qualified to interpret raw medical data in functional terms." *Id.*

13